see the cases collected in the note to Article 1, § 20, of the Constitution of Tennessee in Thompson and Steger's Tennessee Statutes, Vol. 1, p. 70. For a collection of the Tennessee cases arising under the various statutes of limitations of this State, see the same work, Vol. 2, §§ 2754 —2786.

JOHN LEVERTON and ELIZABETH LEVERTON *v.* ADAM T. WATERS *et al.*

PARTITION.—DISPUTED TITLE.—*Why chancery will repel the parties in such cases.*

1.  The refusal of courts of chancery to entertain bills for partition, where a disputed title is to be litigated in the same suit, is based rather on the inconvenience of litigating several unconnected matters in the same suit, and the objection of multifariousness, than upon a total want of jurisdiction to dispose of such cases.

THE SAME.  *Code,* § 4321.

2.  *Said,* that the decisions of the Supreme Court of Tennessee which hold that partition cannot be decreed unless the title is clear and indisputable, were all rendered prior to the Act of 1852, [ch. 365, § 9,] Code, § 4321; and that under the present practice, where objections to the jurisdiction not taken advantage of by demurrer are considered waived, this Court will not repel the parties because they have sought to obtain partition and settle a disputed title in the same suit.

THE SAME.—*Cases quoted and approved.*

3.  "Even where the object is to partition, but the titles are equitable' or there are equities to settle, a Court of equity may be resorted to for this purpose; and having done so, will decree partition under the same bill." Carter v. Taylor, 3 Head, 35; Almony v. Hicks, 3 Head, 39.

DEED OF TRUST.—*Presumption of Satisfaction, from Lapse of Time.*

4.  After a lapse of twenty-one years, in the absence of proof to the contrary, the courts will presume that a deed of trust to secure an indebtedness has been satisfied.

ANDREWS, J., delivered the opinion of the court:

The bill in this cause is filed for the purpose of obtain-

ing partition of a tract of land formerly owned by John Waters, the father of complainant Elizabeth. John Waters died about twenty years before the filing of the bill. After his decease his widow lived upon the place without any assignment of dower for some eleven or twelve years and until her death. Adam F. Waters, a son of John Waters, also lived upon the place with his father and mother, and has continued to live there until the present time. Geo. Waters, an illegitimate son of John Waters, and the complainant Elizabeth Leverton, also lived upon portions of the farm.

It appears by the bill that some years prior to his decease, John Waters made a deed of trust to one Murphy, nominally to secure an indebtedness to his sons George and Adam F., which deed of trust is charged to have been without consideration, and that it was never intended by the parties that it should be executed.

Murphy, the grantee in the deed of trust, and the heirs of John Waters are made parties to the bill, and it is prayed that the title be divested out of Murphy, or the deed of trust be declared void, and that partition may be made.

Murphy the trustee, and George Waters, one of the *cestuis que trust* in the deed of trust, answer the bill and state that the deed of trust was not made to secure any valid indebtedness, and was not intended to be executed, and that it was made to hinder one Fagalla in the collection of a debt owing to him by John Waters.

Adam F. Waters, a son of John Waters and one of the beneficiaries in the deed of trust answers the bill, and alleges that the deed of trust was made to secure a claim in his favor against John Waters for about three years' services rendered by him for the said John. He also alleges that

there was a contract between himself, his brothers George and John Waters, under which he and the said George were to support the said John and his wife during their life, and were to have the land as their compensation for this service ; that his brother George, being tired of the contract, assigned his interest in it to the respondent Adam, and that he has faithfully carried out and performed his part of it, and has always claimed the farm as his own under the contract. He claims the farm as his own, and denies the right of complainants and the other heirs to have partition. No demurrer is filed to the bill, or objection made to the jurisdiction of the Court to decree partition.

The chancellor decreed that the complainants were entitled to have partition made of the premises, and from this decree Adam F. Waters has appealed to this Court.

It is now insisted that no decree for partition can be made in this case because the title is not clear and indisputable, and Groves vs. Groves, 3 Sneed, 187, is cited to sustain this position. A number of decisions have been made by this Court, of which that above cited is one, to the effect that a court of chancery will not entertain a suit for partition of land if it appears that the title is in dispute. These decisions were all made, however upon the law of this State as it stood previous to the enactment of the statute of 1852, (Code, § 4321,) which provides that the filing of an answer shall be a waiver of objection to the jurisdiction of the Court.

The refusal of Courts of Chancery to entertain bills for partition where a disputed title is to be litigated in the same suit, is based rather upon the inconvenience of litigation of several unconnected matters in the same suit, and upon the objection of multifariousness, than upon a total want of

jurisdiction to dispose of the case.   Even before the act of 1852, above referred to, I think that the Court of Chancery might have assumed jurisdiction upon this bill for the purpose of disposing of the cloud or incumbrance created by the trust deed, and having done so, have proceeded to decree the partition prayed for.   " Even where the object is to partition, but the titles are equitable or there are equities to settle, a Court of equity may be resorted to for this purpose; and having done so, will decree partition under the same bill." Carter vs. Taylor, 3 Head, 35. Almony vs. Hicks, 3 Head, 39.

But under our present system of pleading, where the objection is not taken by demurrer, and the defendant answers and the parties carry on the cause to a final hearing upon pleadings and proofs, and no obstacle existed to a decree which shall be a complete and final settlement of the case, the court will not turn the parties out of court to go through another process of litigation, merely because they have attempted to clear the title and to obtain partition in the same suit.

Upon the facts of the case the complainants are entitled to relief.   The trust deed is not produced or accounted for, and there is no proof of its contents, or what indebtedness it proposes to secure.

It must have been made about or before the year 1840. If any *bona fide* indebtedness was ever secured by it, the presumption of law, unrebutted by any evidence in the case, is, that it was paid previous to the filing of the bill in this cause, in 1861.   There is no proof that Adam F. Waters ever held possession under it, or claimed title under it, or that any attempt was ever made, or desire expressed, on the part of any one, to have the trust executed.

There is no proof of the existence of any contract between John Waters and Adam F. Waters, such as is alleged in the answer of the latter, or of the existence of any valid lien or claim in favor of Adam F. Waters upon the property.

The decree must be that said deed of trust constitutes no valid claim or lien upon the property in question, and that the Chancellor's decree directing a partition will be affirmed and the cause remanded for further proceedings.

*Decree affirmed.*